UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VANE LINE BUNKERING, INC.<br>Philadelphia City Dock<br>4925 Ft. Mifflin Road<br>Philadelphia, PA 19153 | CIVIL ACTION<br><br>No. |
| v. | |
| ATLANTIC MUTUAL INSURANCE CO.<br>100 Wall Street<br>New York, NY 10005-3743 | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Vane Line Bunkering Inc., by its attorneys Hollstein, Keating, Cattell, Johnson & Goldstein, alleges as follows in on its Complaint herein for Declaratory Judgment and Breach of Contract:

### A. JURISDICTION AND VENUE

1. This action is filed under and pursuant to the Federal Declaratory Judgment Act, Title 28 U.S.C.A. §2201.

2. Jurisdiction of this Court is also invoked pursuant to the provisions of Title 28 U.S.C.A. §1332.

3. Venue is proper pursuant to Title 28 U.S.C.A. 1391(b).

4. There exists an actual controversy between the parties to these proceedings and litigation with respect thereto is imminent and inevitable.

### B. THE PARTIES

5. Plaintiff Vane Line Bunkering Inc. (hereinafter "Vane") is a corporation organized and existing under the laws of Maryland and at all times material hereto maintained and operated the facility known as Philadelphia City Dock, located at

1

4925 Ft. Mifflin Road, Philadelphia, PA., 19153.

    6. Defendant Atlantic Mutual Insurance Company(hereinafter "Atlantic Mutual") is domiciled in New York with its principal place of business at 100 Wall Street, New York, NY 10005-3743, and is licensed in the states of New Jersey and Pennsylvania and does business in Pennsylvania, New Jersey, and the State of Maryland.

    7. At all times material hereto, Atlantic Mutual did business within this judicial district.

### C.  THE POLICIES OF INSURANCE

    8. In consideration of premiums paid, Atlantic Mutual provided certain insurance to Vane and issued the following identified policies of insurance to Vane for the following time periods: Policy No.124000318(3/30/00-3/30/01); Policy No.124000320(3/30/01-3/30/02); Policy No.124000323 (3/30/02-3/30/03); and Policy No.124000325(3/30/03-10/10/03).

    9. The applicable section of the policy in effect for all relevant times hereto is entitled "Protection and Indemnity", Form SP-23 (revised 1/56) (See Exhibit "1"). Form SP-23, a marine insurance policy form, provides in pertinent part:

> The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth:
>
> (9) Liability for fines and penalties, including expenses necessarily and reasonably incurred in avoiding or mitigating same, for the violation of any of the laws of the United States, or of any State thereof or of any foreign country; provided, however, that the Assurer shall not be liable to indemnify the Assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation of any such laws.

10. On or about October, 2003, Travelers Insurance Company agreed to purchase renewal rights to a majority of Atlantic Mutual's commercial marine and ocean cargo lines of insurance, including the insurance referenced above.

11. During the time after the Travelers' purchase as referenced above, Vane was instructed to notify Travelers of its claims made under the Atlantic policies, and that became and was the standard custom and practice with respect to all of Vane's claims handling with Travelers/Atlantic Mutual.

### D. FACTUAL BACKGROUND

12. The Philadelphia City Dock facility's operations are designed to service Vane's tugs and barges. The operations include crew change over, warehousing and provisioning of supplies, and minor maintenance of tugs and barges. The City Dock facility also receives marine safety equipment and life rafts which are transported to the Vane's facility in Baltimore for servicing.

13. In addition to the above description, between January 1, 2001 and May 1, 2007, Vane performed routine barge cleaning activities as part of the normal petroleum distribution business at the Philadelphia City Dock.

14. During the entire time period between January 1, 2001 through May 1, 2007, Vane was unaware that certain permits were required for this activity and therefore did not obtain necessary permits in connection with the barge cleaning activities.

15. In 2007 Vane learned from a consultant that it would likely need an air permit for any barge cleaning activities on its barges at the City Dock facility. Vane was advised that voluntary disclosure of this oversight would mitigate any adverse

actions and/or fines or penalties by the City of Philadelphia.

16. July 16, 2007 Vane met with representatives of the City of Philadelphia to discuss permitting requirements for Vane's City Dock facility in the City of Philadelphia.

17. On September 11, 2007, The City of Philadelphia issued a Notice of Violation to Vane for failure to obtain required permits before conducting barge cleaning operations. (See Exhibit "2").

18. After receipt of the Notice of Violation (which could have had a potential impact of a fine in excess of $1,000,000), Vane's environmental counsel Blank, Rome LLP began discussions and ultimately negotiations with the City of Philadelphia (see Exhibit "3"). The discussions and negotiations continued well into 2008.

19. On July 21, 2008, Vane notified Travelers of a claim for fines. The notice was acknowledged on July 22, 2008 by Travelers. It was presumed, due to prior custom and practice, that said notice was not only for the Travelers policies but also the Atlantic policies(see paragraph 10 above).

20. After considerable negotiation with the City of Philadelphia, a final agreement was reached on or about December 1, 2008, wherein the City of Philadelphia AMS levied a fine against Vane Line Bunkering in the form of a $180,000 civil penalty and $134,347 in Supplemental Environmental Projects (SEP's). In addition Vane incurred legal costs of $53,687.50 and consulting costs of $14,319.92 to mitigate and negotiate the fine. Total cost to Vane was $382,354.42. (See Exhibit "4").

21. It was learned that on November 4, 2009, Mark Smieya, of Travelers claims, sent a copy of his email correspondence with Vane's insurance broker

4

to the "Atlantic Mutual contact -Carl Smith-so he is aware of the current status of the claim". Vane assumed that Atlantic Mutual had received prior notices about this situation per past custom and practice as stated above.

22. The activity which was the subject of the fine and SEP's first occurred for 3 months of Atlantic Mutual's policy #124000318; 12 months of policy #124000320; 12 months of policy #124000323 and 6 months of policy #124000325.

23. During this same time period of January 1, 2001 and May 1, 2007 two additional insurers were on this same type of risk for the period which totaled 76 months. Travelers Insurance Company ("Travelers") and Steamship Mutual Underwriting Association("Steamship") issued policies. Travelers was on the risk for a total 30 months of the total of 76 months and Steamship was on the risk for 13 months of the total of 76 months. Atlantic was on the risk for 33 months of the 76 month total.

24. The basis for determining each insurer's portion was the length of time on risk. The total amount of the claim was $382,354.42. Thus Steamship's portion was 13/76ths of $382,354.42 or $65,402.73 less one deductible. Travelers' portion was $150,929.37 and Atlantic Mutual's remaining portion is $166,022.32, less the policy deductible.

25. Vane submitted claims to both Travelers and Steamship. After an appeal of the initial denials of the claim by both carriers, and after reconsideration of the facts surrounding the reasons for the fine, both rescinded their denials and paid their respective portions of the claim as set forth above.

26. As requested by Travelers, Vane provided another copy of the claim to Atlantic Mutual directly but the claim was wrongfully denied on March 25,

2010. (See Exhibit "5").

27. There is a genuine dispute and controversy between the Vane and Atlantic Mutual.

28. All conditions precedent to recovery under the insurance policies have either been satisfied, waived, or are the subject of an estoppel.

## COUNT I
### (Breach of Contract)

29. Vane hereby incorporates by reference paragraphs 1 through 27 as if fully set forth herein at length.

30. Despite due demand, Defendant had refused to acknowledge and has denied its obligations pursuant to the terms and provisions of the aforesaid policies of insurance.

31. Defendant has breached the contract of insurance.

32. All conditions precedent to recovery under the insurance policies have either been satisfied, waived, or are the subject of an estoppel.

33. As a result of this breach, Vane has incurred damages of $156,022.32 including costs and expenses, including counsel fees, and other costs and expenses and losses that will be proven at the time of trial.

WHEREFORE, Plaintiff demands judgment in their favor and against defendant Atlantic Mutual:

a. For compensatory damages in of $156,022.32, together with pre-judgment interest;

    b.    Requiring Atlantic Mutual to indemnify Plaintiff for all sums it has paid and expenses incurred in satisfaction of the fines imposed by the City of Philadelphia;

    c.    For costs of suit;

    d.    For attorneys fees; and

    e.    For such other relief as the Court may deem just and proper.

## COUNT II
### (Declaratory Judgment)

34.    Plaintiff incorporates paragraphs 1 through 32 as if fully set forth herein.

35.    Plaintiff Vane is an insured on the Atlantic Mutual Policies.

36.    Pursuant to the terms and provisions of the Atlantic Mutual policy language, Defendant Atlantic Mutual is obligated pay in full the costs of fines and penalties, including attorneys' fees; and to indemnify Plaintiff Vane for all sums it has paid in connection with the aforesaid fines and assessments.

37.    All conditions precedent, if any, set forth in the Atlantic Mutual policies have either been satisfied or waived, or are the subject of an estoppel.

38.    Despite due demand, Atlantic Mutual has failed and refused to provide indemnification with respect to the aforesaid fines and assessments and has repudiated its obligations under the its insurance policies.

39.    An actual case or controversy exists between Plaintiff Vane and Atlantic Mutual with respect to the obligation of Atlantic Mutual to indemnify Plaintiff Vane for all sums it has paid.

40.    Declaratory relief from this Court will terminate some or all of the dispute between the parties.

WHEREFORE, Plaintiff demands judgment in their favor and against defendant Atlantic Mutual:

    a.    Declaring and adjudging that Atlantic Mutual has breached its contract to provide insurance;

    b.    Requiring Atlantic to indemnify Plaintiff for all sums it has paid and expenses incurred in satisfaction of the fines imposed by the City of Philadelphia;

    c.    Granting specific performance of the aforesaid insurance contracts sold by Atlantic Mutual to Vane;

    d.    For such other relief as this Court may deem just and proper.

Respectfully submitted,

HOLLSTEIN KEATING CATTELL
JOHNSON & GOLDSTEIN, P.C.

By: s/James W. Johnson (JJ 4811)
    James W. Johnson
    Eight Penn Center
    1628 John F. Kennedy Boulevard
    Suite 2000
    Philadelphia, PA  19103
    Phone 215 320 2082
    Fax   215 320 3261
    EMail:jjohnson@hollsteinkeating.com
    Attorneys for Plaintiff
    Vane Line Bunkering Inc.

Date: _____