# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VANE LINE BUNKERING, INC.    : CIVIL ACTION
                                       :
     vs.                         :
                                       : NO. 10-CV-4460
ATLANTIC MUTUAL INSURANCE CO. :

## MEMORANDUM AND ORDER

**JOYNER, J.**                                                      **February 15, 2011**

This declaratory judgment action has been brought before the Court on Motion of the defendant, Atlantic Mutual Insurance Co. to Dismiss the Plaintiff's Complaint Or, In The Alternative to Stay Proceedings. For the reasons which follow, the Motion shall be GRANTED in part and this matter stayed until conclusion of the Rehabilitation proceedings in the New York state courts.

## Statement of Relevant Facts

Plaintiff Vane Line Bunkering ("Vane") is a Maryland maritime services corporation which operates a facility known as the Philadelphia City Dock on Ft. Mifflin Road in Philadelphia. The Philadelphia City Dock's operations generally consist of servicing and minor maintenance of Vane's tugs and barges, including crew change over, warehousing, and provisioning of supplies. (Complaint, ¶s 5, 12).

This case arises out of three marine insurance policies issued by Defendant to Plaintiff that ostensibly provided

coverage between March 30, 2000 through October 10, 2003 for a variety of events and/or occurrences, including the payment of fines and/or penalties which may be levied against Plaintiff as a result of its business operations. In October 2003, Travelers Insurance Company purchased the renewal rights to a majority of Defendant Atlantic Mutual's commercial marine and ocean cargo lines of insurance, including the policies issued to Plaintiff. (Complaint, ¶ 10). Plaintiff further alleges that following Travelers' renewal rights purchase, it was instructed to notify Travelers of any claims which it sought to make under the Atlantic polices and that this became the standard custom and practice with respect to all of the claims that it made under the Atlantic/Travelers policies. (Complaint, ¶11).

Between January 1, 2001 and May 1, 2007, along with its other operations, Plaintiff performed routine barge cleaning activities as part of its normal petroleum distribution business at the Philadelphia City Dock. Plaintiff undertook these cleaning activities unaware that such activities required certain necessary permits. In 2007, Plaintiff learned from a consultant that an air permit was likely needed for its barge cleaning operations at the City Dock facility and in the hope of mitigating the adverse fines and actions which the City of Philadelphia might levy against it, Plaintiff voluntarily disclosed its permitting oversight. (Complaint, ¶s 13-15). On

July 16, 2007, Plaintiff met with representatives of the City to discuss the permitting requirements. Thereafter, the City on September 11, 2007, issued a Notice of Violation to Plaintiff for its failure to obtain the permits required to conduct its barge cleaning activities. (Complaint, ¶s 16-17).

Following its receipt of the Notice of Violation, Plaintiff and its environmental counsel commenced negotiations with the City of Philadelphia that continued well into 2008. On July 21, 2008, Plaintiff notified Travelers that it was making a claim for the coverage of the fines, believing that by so doing, it was making claim under the pre-2003 Atlantic policies as well. (Complaint, ¶ 18-19). Eventually, Plaintiff reached an agreement with the City in December 2008 whereby the City levied a civil penalty against it in the amount of $180,000 plus an assessment of $134,347 in Supplemental Environmental Projects. Because it incurred an additional $53,687.50 in legal costs and consulting expenses of $14,319.92, Vane submitted claims for a total of $382,354.42 to those of its insurance carriers who were "on the risk" at the relevant time(s).[1] (Complaint, ¶s 20, 23, 25).

Although both Travelers and Steamship initially denied

---

[1] There evidently were two additional insurance companies "on this same type of risk" for "this same time period of January 1, 2001 and May 1, 2007." (Complaint, ¶ 23). In addition to Travelers and Atlantic, Steamship Mutual Underwriting Association also issued a policy at some unspecified point, but was allegedly on the risk for a period of 13 months. Thus, it is averred that Travelers was on the risk for a total 30 months of 76 months, Steamship was on the risk for 13 months of the 76 months and Atlantic was on the risk for 33 months of the 76 month total. (Complaint, ¶ 23).

3

Plaintiff's claim, upon reconsideration, both of those insurers rescinded their denials and paid their portions of the claim. Defendant, however, has steadfastly failed and refused to pay its portion of the plaintiff's claim, giving the policy's pollution exclusion and untimely presentation of the claim as the reasons for its denial. Consequently, Plaintiff brought this suit on September 2, 2010 seeking specific performance to recover compensatory damages for the defendant's alleged breach of contract in the amount of $156,022.32 and a declaratory judgment that as its insured, Defendant is obligated to indemnify Plaintiff in the aforesaid amount. On September 16, 2010, however, the New York Supreme Court entered an Order of Rehabilitation with respect to Defendant Atlantic pursuant to Article 74 of the New York Insurance Law for the reason that Atlantic had become insolvent. In filing the instant motion to dismiss and/or stay this matter, Defendant now asks this Court to abstain from adjudicating the plaintiff's breach of contract and declaratory judgment claims pending the outcome of the rehabilitation proceedings.

## Discussion and Analysis

Abstention from the exercise of federal jurisdiction is the exception, not the rule. <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, 813, 96 S. Ct. 1236, 1244, 47 L. Ed. 2d 483 (1976). "The doctrine of abstention,

4

under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." Id. (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-189, (1959).

Although the Supreme Court has confined the circumstances appropriate for abstention to several limited, general categories[2], Defendant here invokes the abstention doctrine first enunciated in Burford v. Sun Oil Co., 319 U.S. 315, 63 S. Ct. 1098, 87 L. Ed. 2d 1424 (1943) as grounds for this motion to dismiss and/or stay. In Burford, the Sun Oil Company brought suit in equity in Federal District Court in Texas to challenge

---

[2] See, e.g., Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 716, 116 S. Ct. 1712, 1721, 135 L. Ed. 2d 1 (1996)("We have thus held that federal courts have the power to refrain from hearing cases that would interfere with a pending state criminal proceeding, or with certain types of state civil proceedings; cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law; cases raising issues 'intimately involved with the states' sovereign prerogative,' the proper adjudication of which might be impaired by unsettled questions of state law; cases whose resolution by a federal court might unnecessarily interfere with a state system for the collection of taxes; and cases which are duplicative of a pending state proceeding,") citing and quoting, *inter alia*, Colorado River, supra.; Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975); Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S. Ct. 1070, 3 L. Ed. 2d 1058 (1959); Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971 (1941).

the validity of an order of the Texas Railroad Commission granting a permit to petitioner Burford to drill four wells on a small plot of land in the East Texas oil field. Id., 319 U.S. at 316, 63 S. Ct. 1098. The constitutional challenge in that case was of minimal federal importance concerning only whether the commission had properly applied Texas' complex oil and gas conservation regulations. New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 360, 109 S. Ct. 2506, 2514, 105 L. Ed. 2d 298 (1989)(citing Burford, 319 U.S. at 331). Given that Texas had created a centralized system of judicial review of commission orders which "permitted the state courts, like the Railroad Commission itself, to acquire a specialized knowledge" of the regulations and industry, the Supreme Court found the state courts' review of commission decisions to be "expeditious and adequate." Id. (quoting Burford, 319 U.S. at 334). Further, "because the exercise of equitable jurisdiction by comparatively unsophisticated Federal District Courts alongside state-court review had repeatedly led to 'delay, misunderstanding of local law, and needless federal conflict with the state policy,'" the Supreme Court concluded that "a sound respect for the independence of state action required the federal equity court to stay its hand." Id. (quoting Burford, 319 U.S. at 327, 334).

From this sound respect, the principle now commonly referred

6

to as the "Burford doctrine" has emerged. New Orleans, 491 U.S. at 361, 109 S. Ct. at 2514. Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Id. (quoting Colorado River, 424 U.S. at 814. Since "[t]he purpose of Burford is to 'avoid federal intrusion into matters of local concern and which are within the special competence of local courts,'" the courts employ a two-step analysis when determining the propriety of abstention under Burford. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 247 (3d Cir. 2008)(quoting Hi Tech Trans, LLC v. New Jersey, 382 F.3d 295, 303-04 (3d Cir. 2004) and Chircopractic Am. v. Lavecchia, 180 F.3d 99, 104 (3d Cir. 1999). First, courts ask "whether timely and adequate state law review is available." Id. (quoting Hi Tech, at 304, and Riley v. Simmons, 45 F.3d 764, 771 (3d Cir. 1995). If so, it must next be determined whether the case "involves difficult questions of state law impacting on the state's public policy or whether the

7

district court's exercise of jurisdiction would have a disruptive effect on the state's efforts to establish a coherent public policy on a matter of important state concern." Matusow, 545 F.3d 247-248 (quoting Riley, 45 F.3d at 771).

To implicate a matter of substantial public concern, the suit must be filed against a party protected by or subject to the regulatory scheme. Culinary Service of Delaware Valley, Inc. v. Borough of Yardley, 2010 U.S. App. LEXIS 13485 at *23, 385 Fed. Appx. 135, 144 (3d Cir. June 30, 2010)(citing University of Maryland at Baltimore v. Peat Marwick Main & Co., 923 F.2d 265, 273-274 (3d Cir. 1991)). And, to implicate the sort of technical, complex regulatory scheme to which Burford abstention is usually applied, the action must challenge the scheme itself, rather than just actions taken under color of the scheme. Id.(citing, *inter alia*, Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 409-410 (3d Cir. 2005); Gwynedd Properties, Inc. v. Lower Gwynedd Twp., 970 F.2d 1195, 1202-03 (3d Cir. 1992).

In this case, the defendant asserts that in the interim period between its March 25, 2010 denial of Plaintiff's claim and the institution of this lawsuit, it became insolvent and Rehabilitation proceedings were commenced against it by the Superintendent of the State of New York. Two weeks after Plaintiff filed this complaint, on September 16, 2010, the New

8

York Supreme Court entered an Order of Rehabilitation appointing the New York State Insurance Superintendent Rehabilitator of Atlantic Mutual and thereby giving the Insurance Superintendent authority to exercise all of the powers "expressed or implied under Insurance Law Article 74" and authorizing the Superintendent to

> "take such steps and enter into such arrangements as they deem necessary to take possession and/or control of Atlantic Mutual's property, conduct Atlantic Mutual's business and remove the causes and conditions that make this proceeding necessary as they shall deem prudent and advisable."

(Exhibit "B" to Defendant's Motion to Dismiss or in the Alternative to Stay Proceedings, p.2, ¶2). The New York Supreme Court's Order further provided the following on page 3, in paragraphs 9 - 11:

> 9. All persons are permanently enjoined and restrained from commencing or prosecuting any actions or proceedings against Atlantic Mutual, the Rehabilitator or the New York Liquidation Bureau, its employees, attorneys or agents, with respect to any claims against Atlantic Mutual;
>
> 10. All persons are permanently enjoined and restrained from obtaining preferences, judgments, attachments or other liens, or making any levy against Atlantic Mutual's assets or any part thereof;
>
> 11. All parties to actions, lawsuits or special or other proceedings ("Litigation") in which Atlantic Mutual is obligated to defend a party pursuant to an insurance policy, bond, contract or otherwise are enjoined and restrained from prosecuting, advancing or otherwise taking any action within such Litigation, including but not limited to trials, hearings, conferences or other court proceedings, applications or other requests to the court of any nature, proceedings on defaults, settlements or judgments, service of documents, motions, discovery or any other litigation

tasks or procedures for a period of 180 days from the date of entry of this Order;

In Lac D'Amiante du Quebec, Ltee v. American Home Assurance Co., 864 F.2d 1033 (3d Cir. 1988), the Third Circuit was confronted with one of the same issues posed here, *to wit*, whether in a declaratory judgment action, abstention under Burford was warranted by virtue of insolvency proceedings against a New York insurer in the New York courts. In reversing the declaratory judgment issued by the New Jersey District Court, the Third Circuit first observed that New York has adopted a complex and thorough regulatory scheme to liquidate insolvent insurers, and the New York Courts have identified a strong New York regulatory policy that the liquidation of insolvent insurers can best be accomplished through noninterference by outside courts. Id., at 1041. Thus, reasoned the Court:

> "... the regulation of insurance companies unable to meet their obligations entails the type of strong state interest in which application of Burford abstention is appropriate." Id., at 1045. ... Furthermore, it is clear that the very type of "partnership" discussed in Burford exists between the New York state courts and the Superintendent of Insurance. The New York courts issue the orders of liquidation, enjoin suits against the liquidator to protect the proceedings, and oversee the liquidator's assessment of claims against the insurer's estate.
>
> In these circumstances, assumption of jurisdiction by the federal court in a suit against an insolvent insurer in liquidation proceedings would be highly destructive of the state's regulatory scheme. As the Second Circuit recognized in holding that Burford abstention is appropriate in such a circumstance, the "structure of the New York system serves the state's strong interest in centralizing claims against an insolvent insurer into a single forum where they can be

10

efficiently and consistently disposed of." Law Enforcement Insurance Co. v. Corcoran, 807 F.2d 38, 44 (2d Cir. 1986), cert. denied, 481 U.S. 1017, 107 S. Ct. 1896, 95 L. Ed. 2d 503 (1987). One of the chief purposes of New York's regulatory scheme would be lost if an insurer in liquidation had to dissipate its funds defending unconnected suits across the country.

864 F.2d at 1045.[3]

---

[3] Although involving a different state's insurance regulatory statute, it is noteworthy that the Third Circuit and a number of colleagues on this Court have similarly employed this same rationale in finding Burford abstention and a stay of proceedings to be appropriate in several cases involving rehabilitation and/or insolvency proceedings under the Pennsylvania Insurance Act, 40 P.S. §1, et. seq. For example, in Feige v. Sechrest, 90 F.3d 846 (3d Cir. 1997), the former owner of an insolvent life insurance company brought suit against the company and various individual owners/officers for fraudulently misrepresenting the company's assets to the Pennsylvania Insurance Department and converting large portions of the company's mortgage portfolio. Shortly after the commencement of that action, the Pennsylvania Commonwealth Court directed the liquidation of the life insurer and issued an order staying all actions against it. The District Court granted the motion of the Statutory Liquidator to stay all actions against the company, and an appeal followed. Noting that "there can be little doubt that parallel federal and state proceedings would disrupt Pennsylvania's legislative framework for the liquidation of insolvent insurers," the Third Circuit observed that,

> [b]y statute, the Commonwealth Court has jurisdiction over all claims arising under the Insurance Act of 1921. 42 Pa.C.S. §761. Because any claims against Corporate Life (since replaced by the Statutory Liquidator arise under the Act, all or parts of counts III - VIII and X - XIII are subject to timely and adequate state court review. Indeed, there is currently an ongoing proceeding in that court regarding the liquidation of Corporate Life.

Feige, 90 F.3d at 847, 848. Adequate state court review thus being available, the Court found the district court's stay order "entirely appropriate." Id., at 851. And,

> [r]ather than abdicate its judicial duty to exercise its jurisdiction, the district court simply postponed the exercise of that jurisdiction until the proceedings in the Commonwealth Court reach their conclusion. This approach retains the sensitivity for concerns of federalism and comity implicated by Burford abstention, while preserving appellants' right to litigate their claims in the federal forum should the Pennsylvania courts, for jurisdictional or other reasons, fail to adjudicate them. The entry of a stay rather than a dismissal prevents those claims from becoming time-barred should jurisdiction be somehow lacking in the Commonwealth Court, and the preclusion doctrines of res judicata and collateral estoppel will prevent their re-litigation in the more likely event that court proceeds to judgment.

11

Thus, as the New York insurance regulatory scheme makes the necessary timely and adequate state court review available, we next evaluate whether there are "difficult questions of state law bearing on policy problems of substantial public import" or whether the exercise of federal review of the questions posed in this and similar cases would be disruptive of the state's efforts to establish coherent policy respecting "a matter of substantial public concern." In our view, both of these questions may be affirmatively answered simply by re-reading the text of the New York Supreme Court's Order, large portions of which enjoin and/or restrain all persons or parties from litigating any proceedings against the insolvent Atlantic Mutual. Hence, we can only conclude that any actions that we would take at this juncture in this case would blatantly disrupt New York's insurance regulatory scheme. For these reasons, we find abstention to be the appropriate course to follow and we shall therefore grant the request for a stay of proceedings in the order which follows.

---

Id. *In accord*, General Reinsurance Corp. v. MS Casualty Insurance Corp., 2005 U.S. Dist. LEXIS 17997 (E.D. Pa. Aug. 23, 2005); Dalicandro v. LegalGard, Inc., 2001 U.S. Dist. LEXIS 18530 (E.D. Pa. Nov. 15, 2001). These decisions are, we find, in keeping with the stated purpose of the McCarran-Ferguson Act, 15 U.S.C. §1011 which:

"... declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States."